## THE TOWN OF MOUNT HOLLY v. CYRUS BUSWELL.

*Ratification by Town of Contract with Selectmen. Highway.*

The plaintiff's selectmen laid out a highway, mostly upon the defendant's land, and principally for his benefit, and agreed with him that he should waive land damages, build the road, and keep it in repair while he lived where he then did, and that the town should remit all taxes assessed against him for the purpose of repairing highways, so long as he kept said road in repair as aforesaid. The defendant performed his part of said agreement, and kept said road in repair twelve years. The plaintiff recognized said agreement, and received the benefit of the defendant's performance thereof. *Held*, that the plaintiff thereby became bound by said agreement, whether the selectmen had authority to make it in the first instance, or not.

ASSUMPSIT. The case was referred, and the referee reported the following facts :

In December, 1857, the selectmen of the plaintiff town laid out a highway leading from the dwelling-house of the defendant, mainly across the defendant's land, to a main highway then in use. The highway so laid was two hundred and twenty rods in length, and was laid principally for the benefit of the defendant and the farm on which he resided, and at the time said highway was laid, it was agreed between the selectmen and the defendant that, if the selectmen laid out said highway, the defendant should claim of said town no land-damage for its crossing his land, and should build the road himself, without cost to the town, and keep the same in repair while he lived on the farm where he then resided, and still resides, and that all taxes raised by said town and assessed upon the grand list of the defendant for the purpose of repairing highways in said town, were to be remitted to him while he kept said highway in repair. The surveyor who made the survey of said highway, was employed by the selectmen to make their report for record, and it was mutually understood by both parties, if the surveyor considered it proper, that the contract with the defendant should be embraced in the report of the survey ; but said survey, as recorded, contained the contract only so far as is shown by the following clause : " Said town allowing said Buswell to work his own highway-tax on said surveyed highway." The contract was not otherwise reduced to writing. At the time of entering into said contract, by the provisions of the statute then in force, highway-taxes raised for the purpose of repairing roads, were payable in labor, and were expended in the several highway districts ; and the change in the statute giving the towns the right to vote that the highway-taxes should be paid in money, was not at the time contemplated, provided for, or guarded against, by the parties to the contract.

The contingency of extraordinary damage to the highways, resulting from freshets or floods, whereby it might become necessary for the town to raise a money-tax to repair their highways, or some portion of them, and to assess the inhabitants of the town for that purpose, was not made a subject of consideration in making said contract, or spoken of by the parties.

In the year 1866, the plaintiff town voted that the highway tax should be collected in money, and the defendant was assessed with the rest of the inhabitants of said town, and, upon request of the defendant, the selectmen of the town remitted his tax to him, by giving him an order for the amount; and in the other

and intervening years, from the time of the completion of said highway till the bringing of this suit, the defendant had formed a highway district by himself, and worked out his own highway tax on said highway. No remittance was ever made to the defendant, or claimed by him, for money-taxes raised for the purpose of building new roads; but in all cases after the making of said contract, the expenses of building new roads had gone into the current expenses of the town, and formed a portion of the annual town tax.

In the year 1869, in consequence of an extraordinary flood, the highways of said town were badly washed and injured, and said town, by vote at a meeting, about the legality of which no question was made, raised one hundred and seventy-five cents on a dollar on the grand list, for the purpose of repairing the highways; and the grand list of the defendant for that year, was $48.40, and the tax assessed against him under said vote was $84.70. The money thus raised was, by the selectmen of said town, laid out and expended in repairing highways most injured by the flood—the highway in question being injured thereby only to the extent of twelve dollars, and was repaired by the defendant.

The defendant paid his portion of said tax with an order given him for that purpose by the then selectmen of the town, which order was obtained by the defendant by his stating to the selectmen that he had a contract with the town, on record, which gave him a right to such an order, and the selectmen, without examining the record, gave the defendant said order, upon his agreeing if it was not right that he should receive such order, he would make it right; by which the referee finds the parties to mean, that if the defendant had no legal right to such order under his contract with the town, he would refund the amount to the treasury of the town. The selectmen gave said order, relying upon the promise of the defendant to refund the same, or to pay to the town the amount of his tax, provided he had no legal right under the contract to have an order from the town to pay his tax as aforesaid. At the time the order was obtained from the selectmen, the defendant represented to them that he was, by the terms of a contract then on record in the town clerk's office in said town, entitled to all taxes raised for highway purposes, both for old and new roads, and that, if the order was given him by the selectmen as requested, if he had not a right to it, he would make it right; and it appeared from the evidence that the contract was not in its terms put on record, as the defendant supposed it was.

The plaintiff sought to recover the amount of said order, relying upon the express promise of the defendant to refund, if he

had no legal right to the same, and claiming that the contract of the defendant with the town gave him no right thereto.

The referee found for the plaintiff to recover the amount of said order, if the court should be of opinion that the defendant was not entitled to have said tax remitted to him; otherwise, for the defendant to recover his costs.

The court, at the September term, 1872, WHEELER, J., presiding, rendered judgment on the report for the plaintiff. Exceptions by the defendant.

*Walker & Goddard*, for the defendant.

The question submitted by the referee is the legal rights of the parties under his finding as to what the parties agreed upon.

Both the statute then in force, and the Gen. Stat., impose upon the selectmen the duty to lay out, alter, and discontinue highways, as the public good shall require. No other restriction is placed upon them. They are the sole judges as to what contracts are best for the town; no vote of the town can restrain them. Gen. Stat. ch. 24.

By section 14 of said chapter, it is made the corporate duty of the several towns to build and keep in repair the highways within such towns, and the discharge of this important duty rests upon the selectmen. The selectmen, in this case, undertook to discharge that duty by their contract with the defendant, and made a very advantageous contract for the town. There is certainly ample consideration for the town's promise to allow the defendant his highway taxes. The statute does not limit the selectmen to any particular mode of contracting. If this road had been damaged hundreds of dollars in 1869, or any other year of the defendant's residence there, he was held by his contract to repair it; and it appears from the case that the town still insists that he shall keep the contract on his part.

This was an extra highway tax. By the present statute, such a tax may be raised, payable in money or work. In 1857, the referee finds, it could only have been raised in work; if payable in work, the defendant, being from June, 1857, to the time of bringing this suit, the surveyor of a district covering just this road, and the only person on his tax-bill, would have been en-

titled to have allowed himself for the repairs that season, and credited himself with his own work before, and to have thereby satisfied the tax in accordance with his contract with the town. The town cannot annul their contract with the defendant by raising this tax payable in money; the legal rights of the parties are the same, whichever way a tax is raised.

This contract has been fully ratified by the town for twelve years; this being the case, they cannot now avoid their contract, even if there was originally an assumption of power on the part of the selectmen. *Burlington* v. *New Haven & Northampton Co.* 26 Conn. 56.

The doctrine is well established, that the principal cannot repudiate the contract of his agent, on the ground of his having no authority to so contract, and at the same time avail himself of the advantages and profits of the agent's contract.

*C. H. Joyce*, for the plaintiff.

The referee finds that the contract between the defendant and selectmen was, that all the taxes raised for the purpose of repairing highways were to be remitted to him. The question is, what taxes were intended by this contract? The plaintiff claims that it embraced only those raised by the town annually, under the statute. When the contract was entered into, highway taxes were required to be paid in labor; and the referee finds that at the time of said contract no change in the law was contemplated. He also finds that the subject of floods was not spoken of or considered. From the terms of the contract, and what we learn as to the understanding and intentions of the parties from the situation and circumstances in which they were placed at the time it was entered into, the conclusion seems to be irresistible, that the parties intended just what the plaintiff now claims, and that it was not expected or understood to include such a tax as was raised in 1869. The fact that the defendant received an order for his tax in 1866, has no tendency to show that the plaintiff's construction of the contract is erroneous, because that was for his annual highway tax, and nothing more.

The road was built almost solely for defendant's benefit, and down to 1869, he had always worked out his annual highway tax on it.   But in 1869, the first time it became necessary to raise money to repair damage done by floods, this controversy arose, the plaintiff claiming that the contract did not apply to such a contingency.   It cannot be said that the plaintiff has acquiesced in the defendant's construction of this contract, because the plaintiff's conduct, as found by the referee, tends directly to the opposite conclusion.

But whatever the verbal contract or understanding between the parties may have been, we insist that it was attempted to reduce it to writing, and that paper must govern.   The case shows that it was mutually understood by the parties that the contract was to be embraced in the report of the selectmen, if the surveyor thought it proper.   The referee finds that a portion of it was put into the report, and a part left out, but does not find that the surveyor thought it improper to include it all.   The surveyor was the agent of both parties to put the contract in writing; he put in a part, and probably the whole of it, as he and the parties *then* understood it, and gives us no reason why he left out any part, and does not in fact say he did.   It is so well settled as to need no citation of authorities, that if any part of a contract is reduced to writing, the whole must be, and that the writing must govern; parol proof cannot be received to add to or detract from it.

From the terms of this contract, no one can doubt that it speaks just what the parties then understood.   The referee has detailed the evidence upon which he has found the contract as reported by him, so that the question can be raised here, and the plaintiff did not need to object to the parol evidence when it was introduced before the referee.   There is another fact worthy of notice as bearing upon the question of the intention of the parties and the construction of the contract, and that is, the fact that the defendant had a large grand list, and that it would cost but a small sum annually to repair that piece of road.

The plaintiff, in his declaration, claims to recover of the defendant the amount of that order, on the ground of false representations made to the selectmen.   The referee finds that when

the defendant obtained the order, he told the selectmen that by the terms of a contract on record in the town clerk's office, he was entitled to all taxes raised for highway purposes, both for *old* and *new* roads, and that if they would give him the order, if it was not right, he would make it right. When the selectmen came to see the record, they found it was not as the defendant had represented, and the referee finds that it was not what the defendant supposed it was. The selectmen gave him the order, relying upon what he told them in regard to the contract on record, and the defendant said nothing about any other. It turned out, in fact, that there was no such record, and so of course the defendant's representations were false, and the defendant must be held to pay back the amount of the order as he agreed. And again, the defendant having represented that the terms of the recorded contract embraced all taxes raised for *old* and *new* roads, and the referee having found that the contract, as reported by him, did not embrace money raised for new roads, then if parol evidence could come in to patch up the contract, the plaintiff would be entitled to recover on this branch of the case under his special counts, because the contract the defendant represented to the selectmen, had no existence in writing, or parol either, and so his representation was false.

If the plaintiff's theory as to the construction of this contract is the true one, then there can be no question as to the plaintiff's right to recover in this action, as the referee finds that what the defendant meant by doing what was right, was, to pay back the amount of the order to the town. But whatever the court may think in regard to the construction of this contract, the plaintiff claims it was wholly void, for the reason that the selectmen had no power or authority to enter into it.

It has been held that selectmen could not discharge the interest of a witness. *Angel* v. *Pownal*, 3 Vt. 461 ; *Yuran* v. *Randolph*, 6 Vt. 369. Nor receive money from a sheriff collected for the town, and give him a valid discharge. *Middlebury et als.* v. *Rood*, 7 Vt. 125. They have no power to submit any claim against the town to arbitration, except such as they are authorized under the statute to audit and adjust themselves. *Dix* v. *Dummerston*, 19

Vt. 262; *Hollister* v. *Pawlet*, 43 Vt. 425. The powers of selectmen are given and limited by statute. *Dalrymple* v. *Whitingham*, 26 Vt. 345. The statute giving selectmen a certain jurisdiction over the subject of highway, does not authorize them to enter into the contract set forth in this case; it would not authorize them to dispose of the money raised for highway purposes, only as provided by law.

The opinion of the court was delivered by

Ross, J. The referee has found that in 1857, the selectmen of the plaintiff laid out a road, two hundred and twenty rods in length, mostly on the defendant's land, and for his benefit, under an agreement between them and the defendant, that the defendant should charge no land-damages, build the road, and keep it in repair so long as he lived on the farm where he then resided, and that all taxes raised by the town and assessed upon the grand list of the defendant for the purpose of *repairing highways* in the town, should be remitted to the defendant, so long as he continued to keep the road thus laid in repair. The report shows that the defendant has always performed his part of this agreement, and that the town, up to the great freshet of 1869, fulfilled its part of this agreement, and remitted to the defendant, in one way and another, all the taxes assessed against him for the purpose of repairing highways.

After the freshet of 1869, the defendant put the highway so laid out in repair, at an expense of about $12. The town assessed for repairing the highways in the town against the defendant, a tax of $84.70. The selectmen remitted this tax to the defendant by giving him an order on the town treasurer, on his representing he had such an agreement with the town, and that it was on record, and on his promise to refund if it was not so. The agreement turns out not to be fully on record, and this suit is brought to recover back the sum thus remitted. The plaintiff has argued its right of recovery mainly upon the ground of want of authority in the selectmen to make such an agreement on behalf of the town. If the agreement had not been recognized by the town in various ways, and if the town had not re-

47

.ceived the full benefit of the agreement by the defendant's waiving his land-damages, building the road, and repairing it for twelve years, it might be an open question whether the selectmen, by virtue of their office, had the right to make such an agreement. We think, after the action of the town in recognition of that agreement, as found by the referee, and after it has received the benefit of the agreement on its part, it is no longer an open question, and that the town is as much bound by it as it would be if it had specially authorized its selectmen by a vote in a meeting duly warned to enter into such a contract with the defendant. The tax sought to be recovered by the town, falls exactly within the class of taxes which were to be remitted by the agreement, as found by the referee, and the defendant rightfully obtained an order from the selectmen for 1869, remitting said tax, although he procured the order by stating, innocently, that the agreement was on record, when it was not fully on record. The defendant honestly believed it was fully recorded.

The judgment of the county court is reversed, and judgment on the report that the defendant recover his costs.